301 So.2d 332 (1974)
STATE of Louisiana, Appellee,
v.
McCoy WATLEY, Appellant.
No. 54631.
Supreme Court of Louisiana.
October 11, 1974.
*333 Marion Overton White, Opelousas, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., I. Jackson Burson, Jr., Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant was convicted of simple rape, La.R.S. 14:43, and sentenced to ten years at hard labor.
Some twenty-three bills of exceptions were perfected. Arguments are presented in this court based upon fifteen of them. In our view, the only substantial issue is raised by Bill Nos. 2 and 3, having to do with a psychiatrist's testimony.
Bill Nos. 2 and 3:
The context facts, as shown by the virtually uncontradicted State evidence, are these:
Mary C., aged 18, was at a record-hop at a nightclub with some girl friends. She became sick, partly because of some wine she drank and partly because it was during her menstrual period. She went outside. While she was walking, she was taken by force inside a vehicle in which the defendant was riding. The defendant and three other boys took her to a field and each raped her.
Mary, although 18, has an IQ of 54, in the lower 4% of the population. She has, for instance, a first grade reading comprehension ability. A clinical psychologist testified that her mental retardation would be apparent after a short conversation with her. The medical and other evidence indicates she was a virgin before the incident.
The facts in evidence at the trial indicate commission of an aggravated (i. e., forcible) rape, La.R.S. 14:42, a capital offense. However, the grand jury indicted the defendant on the lesser offense of simple rape, La.R.S. 14:43, punishable merely by imprisonment.[1]
*334 By answer to a bill of particulars, the state set forth that they were charging that the sexual intercourse was without the victim's lawful consent either (a) because of an incapacity to resist or understand the act "by reason of a stupor or abnormal condition of mind from any cause", La.R.S. 14:43(1), or else (b) because of an incapacity to understand the act "through unsoundness of mind, whether temporary or permanent," La.R.S. 14:43(3). In either event, the statute provides that it is necessary that the offender either knew or should have known of the victim's incapacity.
The problem of Bill Nos. 2 and 3 arose when the conscientious prosecutor sought to obtain expert medical testimony to prove the "abnormal condition of the mind" which deprived the defendant of a capacity to resist or to understand the act of rape. Aside from the evidence of the clinical psychologist showing mental retardation, the prosecutor introduced the testimony of a psychiatrist of twenty-five years' experience to prove a childlike, passive personality.
The psychiatrist interviewed the victim for about forty-five minutes the morning of the trial. He made no tests, made no records, and apparently had no access to prior history or records. His diagnosis apparently was based solely upon his oral examination of the patient and upon her recounting of the history.
The psychiatrist was qualified as an expert in the field of psychiatry without objection. La.R.S. 15:466. Bill No. 3 essentially was an objection to his drawing a conclusion as to the victim's mental condition, because, as stated in full in the defendant's brief in this court:
"It is elementary knowledge that the functioning mind is one of the most intriguing and complex faculties of a human being. With all due respect to the competency of Dr. Butterworth, it is inconceivable that the doctor could possibly ascertain the mental condition of the prosecuting witness by examining her for forty minutes just before the trial commenced, which was more than six months after the crime in question was allegedly committed."
As raised at least, this contention goes more to the weight of the expert's opinion than to its admissibility.
The more serious and close issue is raised by one of the questions to which Bill No. 2 was taken, which required the doctor to state the history of the rape given to him by the victim. This was to establish the facts on which the medical opinion was based. La.R.S. 15:465. The doctor was permitted to give the history, after the court strongly cautioned the jury of its limited purpose of reciting the clinical facts upon which the expert's opinion was based. The doctor's history obtained from the patient was limited to thirteen lines of factual recital in some sixteen pages of testimony.
As the defendant pointed out at the trial, the substantiating effect of the psychiatrist's summary of the victim's history, as given to him by her, may be far more prejudicial to an accused's fair trial on the merits by the jury, than it is probative of a reason for the psychiatrist's opinion. This is especially true here, where the inarticulate victim was the sole actual witness of the rape (because the four males either did not take the stand or else claimed their Fifth Amendment privilege when called)although her testimony did clearly state the facts of the rape, which were in accord with the psychiatrist's case history.
*335 The use of hearsay history of the case as told to the physician by the patient may be admissible if received not to show the truth of the facts stated but only the basis for his opinion, but all of the hearsay history not necessary to this diagnosis is inadmissible. Underhill's Criminal Evidence, 5th ed. (Supp.1970), Section 310. See, among decisions cited, particularly People v. Brown, 49 Cal.2d 577, 320 P.2d 5 (1958).
Nevertheless, because of the possibility of abuse, the physician's testimony before a jury of the facts recited to him by one he examines or treats has often been limited by various judicial rules. These sometimes vary in application, for instance, according to whether the physician was treating the patient (to whom the patient might be expected to tell the truth in order to get well) or was one employed for the purpose of litigation, or according to whether the patient told the facts to the doctor immediately after the occurrence or at an interval later, according to whether the facts at issue concern an external cause of the injury or condition as contrasted with a symptom or progress of the condition.
See: Marler v. Texas & Pac. Ry. Co., 52 La.Ann. 727, 27 So. 176 (1900); Meaney v. United States, 112 F.2d 538 (CA 2, 1940) (Learned Hand, J.); cases cited in 31A C.J.S. Evidence § 246 b, pp. 655-659 (1964). See also: 6 Wigmore on Evidence, Sections 1720-1722 (3d ed. 1940); 2 Wigmore, Section 655 (3d ed. 1940); 3 Wigmore, Section 688 (Chadbourn rev., 1970); McCormick on Evidence, Sections 292, 293 (2d ed. 1972); Rheingold, The Basis of Medical Testimony, 15 Vanderbilt L.Rev. 473 (1962); Comment, 35 So.Calif.L.Rev. 193 (1962). Cf., Annotation, Medical ExpertOpinionAdmissibility, 51 A.L.R.2d 1051, especially Section 4 (1957).
To avoid the problems thus inherent, sometimes the physicians opinion is elicited on the basis of hypothetical questions based on testimony actually taken at the trial, or (in instances such as the present) on the basis of his own hearing of the person's actual trial testimony.
In the present case, this complex and sensitive issue was properly raised by the objection at the trial. However, in brief in this court counsel does not rely upon it. For this latter reason, as well as because the thirteen lines of history-testimony were not so significant a part of the expert's entire testimony and because the trial judge so heavily cautioned the jury as to the limited purpose of this testimony, we do not feel that the issue is raised here so as to constitute reversible error.
Other Bills and Contentions:
The other bills do not raise substantial contentions.
Of the argued bills, we think it sufficient to observe the following:
An issue or presumption of systematic exclusion of people of African descent does not arise merely upon a showing that, according to the census, 41% of the gross population of the parish is of African descent, whereas only 25% (three out of twelve) of the petit jury chosen were blacks (Bill No. 1);
Although the state had failed to give the precise notice of its intention to use a written confession required by La.C.Cr.P. art. 768, nevertheless the state had furnished the defense with a copy of it some four months before trial, and the defendant was not surprised or prejudiced by the technical failure to give the notice, La.C.Cr.P. art. 769, State v. Coates, 273 So.2d 282 (La.1973) (Bill Nos. 4 and 7);
The confession was shown to have been freely and voluntarily made, and no authority is cited in support of the contention that the trial court erred in permitting the jury to receive the voluntarily written pre-interrogation card by which the defendant acknowledged he had received the Miranda warnings (Bill Nos. 5, 6, 8, and 9);
*336 No legal ground is shown for the directed verdict moved for after each of three witnesses called by the state had taken the Fifth Amendment (Bill Nos. 10, 11, 12), and the record does not reflect that (as contended in brief) the State called them knowing they would do so, even if this contention could be considered when no objection or other motion raised this issue at the trial;
No legal ground is shown for the mistrial requested because a deputy sheriff, not a witness in the case on its merits, talked with the complaining witness to make arrangements with her for a medical examination (Bill No. 13), nor is any prejudice shown; and
There was some evidence from which the jury could properly infer that the defendant knew or should have known of the abnormal condition of the victim's mind at the time of the offense (an element of the crime), and so the motions for a directed verdict (Bill No. 21) and for a new trial (Bill No. 23) grounded upon such alleged lack, were properly denied.
The defendant also contends that the district attorney made prejudicial remarks during his summation to the jury. In the first place, no objection or any other complaint (including the motion for a new trial) was made of the argument at the time it was made or before the appeal. In the absence of objection at the time, the alleged error cannot be considered on appeal, nor in fact was the argument transcribed in the absence of complaint at the time.
The remaining bills (14-20, 22) were not briefed or argued. We find no error in the trial court's rulings.

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
NOTES
[1] La.R.S. 14:43 provides:

"Simple rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:
"(1) Where she is incapable of resisting or of understanding the nature of the act, by reason of stupor or abnormal condition of the mind produced by an intoxicating, narcotic or anesthetic agent, administered by or with the privity of the offender; or when she has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of her incapacity.
"(2) Where she submits under the belief that the person committing the act is her husband and such belief is intentionally induced by any artifice, pretense, or concealment practiced by the offender.
"(3) Where she is incapable through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act; and the offender knew or should have known of her incapacity.
"Whoever commits the crime of simple rape shall be imprisoned at hard labor or not less than one nor more than twenty years."