369 So.2d 1049 (1979)
STATE of Louisiana
v.
James Albert ANDREWS.
No. 63151.
Supreme Court of Louisiana.
March 5, 1979.
Rehearing Denied May 4, 1979.
*1050 Stephen J. Hornyak, Gretna, Gordon S. Patton, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Kenneth L. Sanders, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.[*]
Defendant, James Albert Andrews, was charged with the first degree murder of Herbert Harris. (R.S. 14:30). On December 7, 1977 a jury found defendant guilty as charged. Following a sentence hearing pursuant to C.Cr.P. 905 et seq., the jury recommended that defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence, and defendant was sentenced on December 22, 1977. Relying on three assignments of error, defendant now appeals his conviction and sentence to this court.
The state adduced the following facts: on the evening of August 8, 1977 defendant was playing football with Herbert Harris and other neighborhood teenagers in Marrero, Louisiana; at some point, defendant and Harris began to argue, apparently over who was the better football player, but no physical fight took place. However, defendant announced that he was going home to retrieve his tennis shoes. A short while later, defendant returned, armed with a knife, walked up to Harris and stabbed him fatally in the heart. Defendant then left the scene, but was later arrested.

Assignment of Error No. 1
Defendant argues that the trial court erred in permitting a state witness to testify about a diagram he had prepared. The defense objection was based on hearsay and the right of confrontation. At trial state witness Don Carson, a Jefferson Parish evidence custodian and crime lab technician, testified that in connection with his work he prepares diagrams of crime scenes; that he had no formal training, but did have two and one-half years practical experience; and that he has diagramed over sixty locales. He stated that it is not unusual for him to prepare a diagram on the basis of measurements provided by another officer which was the procedure he had used in the instant case. When the state asked Mr. Carson to identity S-6, the sketch, the defense counsel objected on grounds of hearsay because Mr. Carson did not take the measurements.
In Louisiana the rule concerning the introduction of demonstrative evidence is that the foundation laid must establish that it is more probable than not that the evidence is connected with the case and that the evidence has some relevance which *1051 the trial court considers sufficient to warrant its introduction. State v. Drew, 360 So.2d 500, 518-19 (La.1978) and cases cited therein. Ultimately connexity is a factual matter for determination by the jury. State v. Drew, supra; State v. King, 355 So.2d 1305 (La.1978). Maps or diagrams generally are admissible to aid the jury in understanding testimony if shown to be an accurate representation of the subject matter in question and the ruling of the trial court relative to admissibility will not be disturbed on appeal unless there has been abuse of discretion. 3 Wharton's Criminal Evidence, § 641 (13th ed. Torcia, 1973). See also United States v. Goodwin, 470 F.2d 893 (5 CA 1972). In State v. Triplett, 285 So.2d 532 (La.1973), where the arresting officer had returned to the scene and drawn a sketch, this court held that admission of the sketch at trial was not an error. In so concluding, this court noted that the fact that the sketch was not absolutely accurate in every detail and distance did not negate its relevancy or render it inadmissible, but rather would go to the weight accorded the sketch by the jury.
In the present case, the technician who took some of the measurements and prepared the sketch and the detective who also took some of the measurements both testified that the sketch appeared accurate. The mere fact that the preparer relied on some measurements taken by another is not critical under these circumstances when both parties are subject to cross-examination. Further, as the state contends in brief, the diagram and related testimony were admitted not to show the truth of the measurements used in its preparation but merely to aid the jury in understanding the case. There is no substantial hearsay violation. R.S. 15:434; C.Cr.P. 921.
This assignment is without merit.

Assignment of Error No. 2
Defendant argues that the trial court erred in refusing to allow Dr. Arno'ult, a psychologist specializing in educational psychology, to testify as to defendant's prior medical history. In brief defense argues that Dr. Arnoult's testimony should have been admitted over the state's hearsay objection as an exception to the hearsay rule. He contends that the excluded medical history involved ordinary diagnostic findings based on objective data whose trustworthiness is satisfied without cross-examination and the Mississippi physician who treated defendant is deceased, thus necessitating the proffer evidence. Defendant counsel argues that his case was prejudiced by the exclusion because he was barred from proving that defendant suffered from a disease of the mind which prevented him from contemplating the natural and probable consequences of his actions or rendered him unable to distinguish right from wrong.
Although not admissible as evidence of the truth of the facts stated, a statement by a patient to a physician as to past matters, including past medical history, may be included in the physician's testimony to show the basis for his opinion. Wharton's Criminal Evidence § 312 (13th ed., Torcia, 1972); C. McCormick, Evidence § 293 (Cleary ed. 1972); State v. Watley, 301 So.2d 332 (La.1974).[1] Medical experts are expected to rely in part on tests and examinations performed by others in arriving at their opinions and this reliance does not render their opinions inadmissible hearsay. State v. Nicolaus, 340 So.2d 296 (La. 1976); State v. Vincent, 338 So.2d 1376 (La.1976). Although the expert witness in the present case is a psychologist, rather than a physician, these rules apply equally to him when he is testifying in the area in which he has special training and experience. See R.S. 15:464. As in the case of any expert witness, the nature and extent of his education, training or experience should go to the weight of his testimony, rather than its admissibility. See Wharton's Criminal Evidence, supra at § 590.
*1052 In the present case, defendant pleaded not guilty and not guilty by reason of insanity. C.Cr.P. 552. After the state rested its case, the defense called Dr. Joseph F. Arnoult, who was qualified as an expert in the field of psychology without objection. R.S. 15:464; R.S. 15:466. When the witness began to relate defendant's history as a predicate to the procedures used when Dr. Arnoult examined defendant and compiled his results, the state objected on grounds of hearsay. Then the trial court questioned Dr. Arnoult as to the extent of his proposed testimony, and he stated, "I was going to bring out the fact of an illness twice that occurred with some underlying factors, that could possibly be the reason why the subject is having difficulties." Defense counsel added, "We are talking about something that happened in the '60's, the people are in Mississippi, and we can't get the medical records, because the doctor who treated him is dead . . ." After some further discussion out of the presence of the jury, the trial court ruled that Dr. Arnoult could not testify as to organic diseases because he did not have any personal knowledge in that regard having received the information from defendant and his parents.
After the trial court's ruling, Dr. Arnoult continued to testify about the test he administered to defendant[2] and the results he compiled.[3] During his testimony, Dr. Arnoult stated that defendant exhibited indicators of brain damage, "probably due to the extremely high fever he had as a child." He further stated that although defendant appeared emotionally stable, he would have a hard time dealing with an environment geared to the average population and would also have a "difficult time dealing with rage and extreme emotional levels due to his organic brain damage." Finally, he added that it would be possible for defendant to commit an act and "for him not.to know why the act is being committed, just acting on impulse . . ."
In the instant case, although Dr. Arnoult was prevented from fully testifying to defendant's medical history which defendant and his parents related to him. Dr. Arnoult did state before the jury that the accused had suffered from a high fever during childhood which apparently caused organic brain damage and that brain damage was evidenced in the results of the tests Dr. Arnoult administered. Moreover, in all other respects, Dr. Arnoult was permitted to testify freely concerning the nature of the tests, defendant's performance on these tests, and his opinion as to defendant's mental capacity based on these test results.[4] Further, after Dr. Arnoult's testimony, defendant's mother testified that in 1963 defendant had a temperature of 105 degrees, had gone into convulsions, and was treated by "Dr. Bob" in Mississippi, who was deceased, and that in 1966 or 1967 defendant had another "attack" and was treated by Dr. Caruso who was still practicing on Barataria Boulevard in Marrero. (Dr. Arnoult also alluded in his testimony to the possibility that if the defense would contact "another doctor here in the city, he might have some records on it."). Finally, no records *1053 were sought to be introduced. Thus, neither the exception relative to certified copies of hospital records, R.S. 13:3714; State v. Trahan, 332 So.2d 218 (La.1976), nor any business record exception, State v. Monroe, 345 So.2d 1185 (La.1977), were even arguably applicable.
Under these circumstances, the trial court's refusal to allow Dr. Arnoult to relate defendant's medical history was an error but it is not reversible error.

Assignment of Error No. 3
Defendant contends that the trial court erred in refusing to give his proposed jury charge concerning mental capacity, and argues that this court should modify its interpretation of the McNaughten Rule.
Defendant requested the following two special jury charges:
(1) "The mental capacity and mental condition of the defendant are to be considered by the jury in arriving at a verdict."
(2) "The mental capacity and mental condition of the defendant are to be considered by the jury in consideration of the possible verdicts of first degree murder, second degree murder and manslaughter."
After refusing to give these charges, the trial court in its jury instructions explained that all persons are presumed sane; that the defendant has the burden of proving he was insane when he committed the offense; that a person is legally insane when he is unable to distinguish between right and wrong; and that subnormal mentality is no defense to a crime unless the person charged could not distinguish between right and wrong.[5] The trial court also gave a full charge on specific intent, including the statement that "a sane person is presumed to intend the natural and probable consequences of his own deliberate acts. Consequently, it is murder if a sane person intentionally assaults another in such a manner as would likely cause death or likely cause serious bodily harm." The trial court also instructed the jury at length on the various other elements of first degree murder, second degree murder and manslaughter.
C.Cr.P. 807 provides that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation and is not included in the general charge or in another special charge, if it is wholly correct and pertinent. See, State v. Marse, 365 S.W.2d 1319 (La.1978); *1054 State v. Atkins, 360 So.2d 1341 (La.1978); State v. Williams, 346 So.2d 181 (La.1977). The trial judge under the express provisions of the Code of Criminal Procedure must charge the jury with the applicable law of the case:
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility." R.S. 14:14.
See, State v. Plaisance, 252 La. 212, 210 So.2d 323 (1968), cert. den. 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 470 (1968). R.S. 14:14 is the codification of the well known test in McNaughten's Case, 1 Car. & K. 130, 10 Clark & F. 200, 8 Eng. Repring. 178 (1843). See Reporter's Comment, Art. 14 of Louisiana Criminal Code, originally enacted by Act 43 of 1942. See also, State v. Berry, 324 So.2d 822 (La.1976). This court also has consistently held that under the statutory definition in R.S. 14:14, a mental defect short of legal insanity cannot serve to negate specific intent and reduce the degree of the crime. State v. Weber, 364 So.2d 952 (La.1978); State v. Jones, 359 So.2d 95 (La. 1978); State v. Johanson, 332 So.2d 270 (La.1976); State v. Berry, supra.
In the instant case, under R.S. 14:14 and the jurisprudence interpreting it, the trial court did not err in refusing to deliver the two requested special charges to the jury. However, the defense also contends that this court has given an unduly restrictive interpretation of the insanity defense of R.S. 14:14 and argues that we should modify or liberalize our interpretation of the McNaughten Rule in R.S. 14:14. Defense counsel notes that the McNaughten test has long been criticized and suggests that this court consider the American Law Institute test as a modification of the legislatively mandated insanity test.
This court is not unaware that the McNaughten test has long been under attack, but our legislature has by R.S. 14:14 expressly adopted the McNaughten test of insanity; whether wise or unwise, this legislative choice does not admit of judicial substitution of another test. State v. Berry, 324 So.2d at 825. Any modification or liberalization of our test of insanity in R.S. 14:14 must start with the legislature. See also, State v. Weber, supra; State v. Johanson, supra; State v. Berry, supra; State v. Plaisance, supra; State v. Bickham, 239 La. 1094, 121 So.2d 207 (1960); State v. Jenkins, 236 La. 256, 107 So.2d 632 (1958).
This assignment of error lacks merit.
For the reasons assigned, the conviction and sentence of defendant are affirmed.
NOTES
[*] Judge Cecil C. Cutrer, Louisiana Court of Appeal, Third Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] We note that there is some dispute as to the applicability of this rule to physicians employed in anticipation of litigation. See, C. McCormick, supra at §§ 291, 292 and 293. State v. Watley, supra.
[2] Dr. Arnoult administered the Weshcler Adult Intelligence Scale, the Wide Range Achievement Test, the Bender Visual Motor Gestalt Test and the Rorschack Ink Blot Test.
[3] From the tests, Dr. Arnoult determined that defendant has a full scale IQ of 69 (placing defendant in the educable mentally retarded range); that his mental age was eleven and one-half years; that his achievement levels in mathematics and reading were at fourth and third grade levels respectively; that his psychomotor level (eye-hand coordination) was slightly below his mental ability; and that he was in basic contact with reality.
[4] In State v. Williams, 346 So.2d 181 (La. 1977), the defendant had difficulty in placing his medical history before the jury in connection with his insanity defense because the defense in attempting to lay the foundation for an expert opinion that defendant was insane when he committed the offense asked the doctor to recite defendant's medical history from reports that the doctor did not prepare. The trial court sustained the state's hearsay objection to the medical reports and this court found the trial court in error. But the error did not prejudice the defense because the witnesses referred freely to the facts in these reports in stating their understanding of defendant's past medical history and in explaining how this history related to their opinions.
[5] Specifically, the charge given by the trial court was:

"I will now discuss the plea of not guilty by reason of insanity.
All persons are presumed to be sane, until the contrary has been proven by a preponderance of competent, legal evidence. As a result of this presumption, the burden of proof is upon the defendant in this case to overcome the presumption of law that he is sane by a preponderance of the evidence.
The burden of proof is not upon the State to show that the defendant is sane. He is presumed to be presently sane. He is also presumed to have been sane at the time of the commission of the crime. Consequently, the burden is upon him to show by a preponderance, or weight of the evidence, that he was insane at the time of the commission of the crime.
A person in law is said to be insane when, as a result of some disease of the mind, he is unable to contemplate, or foresee the usual, probable, natural and reasonable consequences of his acts. In other words, a person is legally insane when he is unable to distinguish between right and wrong; and in law a person is also said; to be insane, if, although he can distinguish between right and wrong, he cannot, as a result of some disease of the will, choose between right and wrong.
Personal peculiarities, eccentricities, fits of temper or rage, are not of themselves indicative of insanity. They may aid the jury in determining whether or not a defendant is sane or insane, but of themselves, if the defendant is able to distinguish and choose between right and wrong, would not be sufficient for the jury to base thereon a verdict of insanity.
When you consider the defendant's mental condition, you should consider all evidence produced by both sides. Weakness of mind or a diminished mental capacity cannot excuse an accused when there exists the capacity to know that the act in question is wrong.
Otherwise stated, subnormal mentality is no defense to a crime unless the person charged could not distinguish between right and wrong. Insanity, whatever its form, to be an excuse for the commission of a crime, must be of such nature as to render the defendant without sufficient reason to know what he is doing, or to know right from wrong."