SWIFT, Justice Ad Hoc.*
Albert Lee Smith was charged with attempted second degree murder in violation of La.R.S. 14:27 and 30.1. After trial by jury, he was convicted of attempted manslaughter and sentenced to imprisonment at hard labor for IOV2 years. The defendant relies on three assignments of error on this appeal. Having found that none constitute reversible error, we affirm his conviction and sentence.
At approximately 2:30 a.m. on November 22, 1979, defendant Smith and one Isabell Reed departed the Soul Bar and Grill in the Town of Lake Providence, Louisiana. Isabella boyfriend, Lonnie Sanders, left the establishment shortly thereafter and upon identifying the defendant’s car followed it in the Lake Providence area for approximately thirty minutes. On a black top road outside the city limits, Sanders pulled in front of the defendant, partially blocking the road. Smith stopped. Sanders entered defendant’s car and asked Isabell if “she was doing what she wanted to do.” Being assured that she was, Sanders exited the vehicle, cursing the defendant and threatened “to get his wife.” Defendant produced a .22 calibre pistol and fired five shots at Sanders. He then got back in his ear and drove off with Ms. Reed, leaving Sanders lying in the street. While driving by the scene shortly thereafter, Robert Bell and others discovered Sanders and notified local authorities.

ASSIGNMENT OF ERROR NO. 1

The defendant attempted to show at the trial that he shot Sanders in self-defense and that the shooting was justified under R.S. 14:19 to prevent a forcible offense against his person. To this end, Smith testified that Sanders normally carried a small .25 calibre automatic pistol in his trouser pocket and the latter reached for his pocket as he turned to walk back to his vehicle. Fearing for his own safety, defendant then opened fire on Sanders. Sanders acknowledged that he put both hands in his pockets as he turned away from Smith, “because it was cold that night.” However, he denied that he ever carried a gun on his person.
In an attempt to bolster his account of the shooting, defendant sought to adduce testimony from one William Fergerson concerning an earlier confrontation between Sanders and himself. The state objected to such testimony on ground that the defendant had failed to demonstrate any overt act on the part of Sanders as would justify the introduction of prior threats against the accused. La.R.S. 15:482. The trial court agreed with the state, but nevertheless ruled that such evidence was admissible for the purpose of impeaching Sanders’ assertion that he had never previously threatened the accused. Thereafter, Fergerson took the stand and testified Sanders had entered the “Silver Barn” approximately two weeks prior to the instant shooting and, while looking directly at defendant, stated that “something was going to happen to somebody and it was going to happen soon.” No limiting instruction was given the jury by the trial judge regarding the use of this testimony.
La.R.S. 15:482 provides:
“In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.”
As noted in State v. King, 347 So.2d 1108, 1110 (La.1977), this court has repeatedly held that:
“[ejvidence of prior threats made by the victim . . . [is] relevant in a case where the plea of self-defense has been raised to show that the victim was the aggressor and that defendant’s apprehension of danger was reasonable. State v. Green, 335 So.2d 430 (La.1976); State v. Lee, 331 So.2d 455 (La.1976); I Wigmore on Evidence, § 63 (3rd ed. 1940); McCormick on *1092 Evidence, § 295 (2nd ed. 1972). However, evidence of dangerous character or threats against the accused is not admissible in the absence of evidence of hostile demonstration or of an overt act on the part of the person slain. La.R.S. 15:482. Overt act in this context means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. See State v. James, 339 So.2d 741 (La.1976); State v. Green, supra; State v. Lee, supra; State v. Brown, 172 La. 121, 133 So. 282 (1931).”
In this case the only evidence of an overt act was that related above, that Sanders had put his hand or hands in his pocket or pockets as he returned to his vehicle. It is doubtful that this testimony was sufficient to constitute the “appreciable evidence . . . tending to establish the overt act” which is required for admission of testimony concerning prior threats against the accused. State v. Lee, 331 So.2d 455 (La.1976). But even so, it is clear the defendant was in no way prejudiced in this instance since the objectionable evidence was actually introduced at trial. Under these circumstances, particularly since no limiting instruction as to such testimony was ever given the jury, it is clear that this assignment does not present reversible error. La.C.Cr.P. Art. 921.

ASSIGNMENT OF ERROR NO. 2

Similarly, defendant contends that the trial court erred in refusing to permit Ms. Reed to testify as to whether she knew of any bad blood between the victim and the defendant. A review of the record reveals no such limitation of cross-examination. In fact, Ms. Reed testified that Sanders and the defendant “didn’t like each other” at the time of the instant offense. She also stated that this enmity arose from the fact that Sanders had fathered a child by one of defendant’s cousins. Further inquiry into the subject was halted, however, when Ms. Reed admitted she had no personal knowledge of Sanders’ relationship with defendant’s cousin.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3

In this assignment the defendant contends the trial court erred in denying his motion for a new trial which was based on the fact that one of the jurors, Mrs. Emma Jean Bell, was the wife of state witness, Robert Bell.[1]
Mrs. Bell admitted on her voir dire examination that she and her husband had discussed his knowledge of the case. However, she stated unequivocably that she had not formed any opinion as to the guilt or innocence of the defendant and would be fair and impartial. Nevertheless, she was challenged for cause under La.C.Cr.P. Art. 797(3) which provides as a ground for a challenge for cause:
“The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;”
When it was pointed out before any ruling was made on the challenge that such a husband-wife relationship was not mentioned in this section, defendant’s counsel said, “[w]e accept her, Your Honor.” This would indicate that the challenge had been withdrawn.[2]
Be that as it may, it certainly cannot be said that the trial judge abused the broad discretion that is vested in him in such matters had the challenge actually been denied. State v. Passman, 345 So.2d 874 (La.1977).
*1093 Normally, a prospective juror’s assurance that he or she can serve in an impartial capacity has been accepted at face value. Lately, however, this court has recognized that in certain situations it was unreasonable for the trial court to conclude that a prospective juror could be impartial despite his statement that he could. State v. Monroe, 366 So.2d 1345 (La.1978); State v. McIntyre, 381 So.2d 408 (La.1980); State v. Lewis, 391 So.2d 1156 (La.1980). A husband-wife relationship between a prospective juror and a state witness under some circumstances might be expected to give rise to such a situation. However, in the case at bar it is obvious that Mr. Bell’s knowledge related solely to discovery of Sanders lying unconscious beside his automobile. Mrs. Bell was not with her husband at the time and had no personal knowledge of the offense. Since acceptance of Mr. Bell’s testimony would in no way refute either the victim’s or the defendant’s versions of the incident, clearly this would not prevent her from serving as an impartial juror.
This assignment lacks merit.

DECREE

For the reasons assigned, defendant’s conviction and sentence are affirmed.
AFFIRMED.

 Judges O. E. Price and Fred W. Jones, Jr. of the Court of Appeal, Second Circuit, and Judge G. William Swift, Jr. of the Court of Appeal, Third Circuit, participated in the decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associate Justices Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.

. Since this relationship was disclosed during the voir dire examination and the prospective juror was then challenged for a cause by the defendant it appears that in this assignment the latter is simply reurging the challenge and we will treat it as such.

. Also, the record does not disclose the defendant exhausted his peremptory challenges before completion of the panel in this case, as is required by La.C.Cr.P. Art. 800 to successfully complain of an erroneous ruling in this regard.