566 So.2d 441 (1990)
Arlene PARMELEE
v.
MARTIN MARIETTA MICHOUD AEROSPACE, INC.
No. 89-CA-2151.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1990.
*442 Darleen M. Jacobs and Brian C. Beckwith, Darleen M. Jacobs, P.C., New Orleans, for plaintiff/appellee, Arlene Parmelee.
Robert E. Kerrigan, Jr. and Jude D. Bourque, Deutsch, Kerrigan & Stiles, New Orleans, for defendant/appellant, Martin Marietta Michoud Aerospace, Inc.
Before SCHOTT, C.J., and BARRY and BECKER, JJ.
BECKER, Judge.
Defendant, Martin Marietta Michoud Aerospace, Inc. (Martin Marietta), appeals the judgment of the trial court awarding plaintiff damages for injuries allegedly sustained as a result of a slip and fall.
Plaintiff, Arlene Parmelee, was an employee of the United States Department of Agriculture's National Finance Center, working as a document processing clerk. The National Finance Center is located in building space leased from Martin Marietta at their Michoud Assembly Facility in eastern New Orleans.
On October 8, 1986, plaintiff was preparing to exit the facility at the end of her work day. As she started to walk down the hallway, plaintiff slipped and struck her head on the floor. The hallway in question was being waxed by a Martin Marietta maintenance crew. It appears that no warning or an inadequate warning was given concerning the condition of the floor.
After a trial on the merits, the trial court found defendant liable and rendered judgment in favor of the plaintiff. The trial court awarded Ms. Parmelee $50,946.50 in lost wages and $85,000.00 in general damages. The trial court found that plaintiff had several bulging discs which was caused or aggravated by the fall. The trial court further stated that the "plaintiff has become disabled since the accident, and according to plaintiff's treating physician, Dr. Daniel Seltzer, plaintiff continues to suffer pain and her condition is unlikely to change in the future."
On appeal, defendant seeks review of the quantum of damages awarded to plaintiff. Defendant does not appeal the trial court's findings of liability. Defendant, Martin Marietta, contends that:
*443 (1) the trial court erred in awarding lost wages to the plaintiff from October 8, 1986 until December 6, 1989;
(2) the trial court erred in excluding certified copies of medical records from hospitals into evidence as allowed under L.S.A.-R.S. 13:3714;
(3) the trial court erred in holding that Dr. Laborde's testimony was speculative without allowing him the full opportunity to explain the facts of his expert opinion as is allowed under L.S.A.-C.E. article 703; and
(4) the trial court abused its discretion and acted contrary to the law in the award of general damages granted to the plaintiff.
Immediately after the accident, the plaintiff was brought, via ambulance, to the Pendleton Memorial Methodist Hospital emergency room where x-rays were taken and a cervical collar was placed on plaintiff's neck. Ms. Parmelee was then discharged and advised to see a physician. On October 22, 1986, plaintiff presented herself to Dr. Daniel Seltzer with complaints of back and neck pain, and headaches. X-rays taken on that first visit revealed moderate advanced arthritic changes throughout the cervical spine, particularly in the lower portion of the neck; obliteration of the L5-S1 disc which appeared to be of a chronic nature; and moderate evidence of degenerative arthritis throughout the lumbar spine.
On January 19, 1987, plaintiff underwent a MRI scan which revealed arthritic changes in the lumbar spine and suggested a herniated or bulging disc at the L5-S1 level. Dr. Seltzer also testified that the MRI showed signs of degenerative arthritis throughout the spine. Dr. Seltzer indicated that the disc problem could be related to the fall but that more likely was a result of a combination of factors, including the fall on October 8, 1986.
Dr. Seltzer, on July 13, 1987, stated that plaintiff could return to light duties. Plaintiff could perform sedentary or desk work but could not lift or carry anything over five pounds.
Ms. Parmelee was still under the care of Dr. Seltzer at the time of trial. Dr. Seltzer stated that plaintiff's prognosis for any further recovery was poor. At the time of trial, plaintiff was limited to carrying or lifting nothing more than ten pounds. Ms. Parmelee was also limited to climbing one flight of stairs. Further, she was not able to stoop, crouch or bend. Plaintiff, if she was to work, would need the opportunity to walk around.
Dr. Seltzer referred plaintiff to Dr. Debra Burris, a neurologist. Plaintiff saw Dr. Burris one time on November 3, 1986. Ms. Parmelee indicated to Dr. Burris that she was suffering with head, neck and back pain, forgetfulness, and dizziness. Dr. Burris diagnosed plaintiff as suffering from post-traumatic headaches.
Plaintiff was also treated by Dr. Charles Brent, a neurosurgeon with Tulane Medical Center. Ms. Parmelee first saw Dr. Brent on February 12, 1987, complaining of back and neck pain, and intermittent numbness of the arms and hands. Dr. Brent treated plaintiff until July 1987. At that time, he noted that plaintiff had shown some improvement. Dr. Brent testified at trial that plaintiff's problem, a degenerative disc condition, could be related to trauma such as a fall. However, Dr. Brent noted that plaintiff did have some degree of preexisting disc disease.
Defendant's medical expert, Dr. James M. Laborde, examined plaintiff on December 18, 1987. Dr. Laborde, after reviewing plaintiff's MRI scan, found that Ms. Parmelee had a lumbar spine degenerative bulge at the L5-S1 level and a small spur or disc at the C6-7 level. Dr. Laborde found plaintiff to be depressed and suffering from tension myalgia, which is pain incurred as a result of psychological stress. Dr. Laborde testified that he found no objective physical impairment. He suggested continuing passive physical therapy and further testing. Dr. Laborde also testified that the plaintiff was able to return to work.
Defendant argues that, in light of the medical evidence, the trial court erred in awarding lost wages from October 8, *444 1986, to December 6, 1989. Plaintiff was sixty-one years old at the time of the accident. December 6, 1989, reflects the date of plaintiff's anticipated retirement if she chose to retire at the age of sixty-five. Defendant contends that the medical evidence clearly shows that plaintiff could have returned to work on July 13, 1987. We agree.
Dr. Seltzer indicated that Ms. Parmelee could return to sedentary work, that is, desk work, on July 13, 1987. Ms. Angie Crowley, plaintiff's supervisor at the U.S. D.A., testified that plaintiff's employment was that of desk work. Further, Ms. Crowley stated that plaintiff's job allowed her to move around and stretch as necessary.
The medical evidence clearly reveals that Ms. Parmelee was able to return to work on July 13, 1987. Therefore, we must find that the trial court was clearly wrong in its award of lost wages. Accordingly, the award of lost wages is reduced to $11,923.81 (lost wages from October 6, 1986 to July 13, 1987).
Defendant also argues that the trial judge erred in excluding certified copies of plaintiff's medical records from prior hospitalizations. Defendant contends that the records would impeach plaintiff's testimony that she had no back problems prior to the accident on October 8, 1986. The trial court refused to admit these records on the basis that the records were not furnished to the plaintiff and were not directly related to any type of back injuries. Defendant proffered the medical records.
The trial record shows that plaintiff knew of the existence of these medical records as the physicians and hospitals were all named in answers to interrogatories propounded to the plaintiff by the defendant. Further, the testimony of plaintiff's treating physicians indicate that she had a preexisting degenerative condition. The medical documents sought to be admitted would have corroborated this testimony, and would have impeached plaintiff's own testimony of no prior back problems.
The documents which the trial court did admit into evidence clearly show the plaintiff did have a pre-existing back problem. In an Ochsner Hospital pre-anesthetic questionnaire, dated April 22, 1985, plaintiff filled out the section "serious medical problem" as "back trouble." On May 15, 1985, Ms. Parmelee completed a personal history questionnaire for Ochsner Clinic. In this personal history, plaintiff admitted having arthritis or joint problems since the 1950's, headaches, dizziness, numbness in her legs, pain or stiffness in her neck, and recurring or severe backache, among other complaints.
The proffered medical records from Ochsner Hospital and Montelepre Hospital evidence that plaintiff did have preexisting neck and back pain. The documents are clearly relevant as impeachment evidence and are admissible under L.S.A.-R.S. 13:3714. This statute provides:
"Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."
Thus, we are constrained to find that the trial court erred in refusing to admit the medical records in question. See Duhon v. Board of Supervisors of L.S.U., 516 So.2d 222, 223 (La.App. 4th Cir.1987), writ denied, 519 So.2d 116 (La.1988). Johnson v. Bellafonte Insurance Co., 449 So.2d 1134, 1139 (La.App. 3rd Cir.1984), writ denied, 456 So.2d 164, 165 (La.1984).
Where the trial court has committed error in the admission or refusal to admit evidence, or in instructing a jury, when the appellate court has all of the facts before it such error will not warrant remand and the appellate court may make its own independent conclusion as to the facts as revealed in the record before it. L.S.A.-C.C.P. article 2164; Gordon v. City of New Orleans, 363 So.2d 235 (La.App. 4th Cir.1978), affirmed, *445 371 So.2d 768 (La.1979). Accordingly, we will consider the effect of these medical records on the factual findings of the trial court.
The documents which should have been introduced into evidence include medical records from Ochsner Hospital, Montelepre Hospital and Southern Baptist Hospital. X-rays taken at Ochsner Hospital on April 15, 1985, reveal degenerative changes through the cervical and lumbosacral spine. Disc narrowing and spur formations at the C5-6 and C6-7 levels were noted. The C5 vertebra showed a 1-2 mm posterior subluxation relative to C4, quite likely secondary to the degenerative changes. The x-rays of the lumbo-sacral spine revealed "narrowing of the disc space and a little sclerosis of the opposing end plates. The posterior aspect of this disc space also shows either a spur or calcification within the disc margin."
The records from Montelepre Hospital included nurses' notes from plaintiff's admission in 1982. These notes, dated April 19, 1982, reflect that Ms. Parmelee complained of "arthritis of hands, spine and hip from which she experiences continuous pain & stiffness."
X-rays of Ms. Parmelee were taken at Southern Baptist Hospital in 1971 and 1979. Both sets of x-rays revealed a degenerative narrowing of the 5th lumbar interspace and minor marginal hypertrophic changes throughout the lumbar spine. The x-rays taken in December, 1971 also showed minor marginal hypertrophic changes in the cervical spine as well as a loss of cervical lordosis.
These records clearly show that plaintiff had a pre-existing degenerative disc disease. As such, they refute plaintiff's testimony of no prior back problems. Thus, the medical evidence before this court compels us to find that the plaintiff suffered an aggravation of this pre-existing disc disease as a result of the fall in October, 1986.
Defendant further suggests that the trial court erred when it refused to allow Dr. Laborde to testify as to the factual basis for his opinion testimony. Dr. Laborde, apparently as part of his research for his expert opinion, examined plaintiff's prior medical records including those which the trial court refused to admit into evidence. During his testimony, Dr. Laborde attempted to discuss the plaintiff's prior medical records upon which he based his opinion. The trial court refused to allow him to testify as to the contents of those records. The trial court clearly erred in restricting Dr. Laborde's testimony.
Dr. Laborde's reliance on these prior medical records was proper and admissible under L.S.A.-C.E. article 703. Article 703 provides that:
"(t)he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."
The test of the admissibility of Dr. Laborde's testimony is whether it is "of a type reasonably relied upon by experts" in his particular specialized area of expertise. L.S.A.-C.E. article 703, Comments (d); 3 J. Weinstein and M. Berger, Weinstein's Evidence, Section 703(1) (1981).
A medical expert can testify to the conclusion he reached based on examinations performed by others. State v. Roux, 487 So.2d 1226 (La.App. 3rd Cir.1986), writ denied, 489 So.2d 244 (La.1986).
"Medical experts are expected to rely in part on tests and examinations performed by others in arriving at their opinions and this reliance does not render their opinions inadmissible. State v. Nicolaus, 340 So.2d 296 (La.1976); State v. Vincent, 338 So.2d 1376 (La.1976)." State v. Andrews, 369 So.2d 1049, 1051 (La.1979).
Dr. Laborde clearly had the right to fully explain his opinion. The trial court erred in not allowing Dr. Laborde to testify as to the basis for his opinion. However, such error by the trial court was harmless.
The record clearly reveals a sufficient basis for the quantum awarded by *446 the trial court for plaintiff's general damages. Defendant argues that the award of $85,000.00 is excessive. However, even accepting that the plaintiff had a pre-existing degenerative condition, there is evidence to find that the fall on October 8, 1986 contributed to and/or aggravated plaintiff's degenerative disc disease. A defendant takes his victim as he finds him and is responsible for all the natural and probable consequences of his tortious conduct. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Sansonni v. Jefferson Parish School Board, 344 So.2d 42 (La.App. 4th Cir.1977), writ. denied, 346 So.2d 209 (La.1977). Deville v. United States Fidelity & Guaranty Co., 258 So.2d 694 (La.App. 3rd Cir. 1972); Dufrene v. Miller, 266 So.2d 462 (La.App. 4th Cir.1972), writ denied, 263 La. 366, 268 So.2d 257 (1972). Rachal v. Bankers and Shippers Insurance Company, 146 So.2d 426 (La.App. 3rd Cir.1962). Where the defendant's negligent conduct aggravates a pre-existing condition, he must compensate the victim for the full extent of the aggravation.
The testimony of plaintiff's physicians indicates that she had some degree of a pre-existing degenerative arthritic condition of the spine. All three physicians stated that the fall on October 8, 1986, contributed to or aggravated the degenerative arthritic condition. Dr. Seltzer and Dr. Brent both testified that while there had been some improvement, plaintiff would continue to suffer from the aggravation of this condition.
Even though we found that the trial judge committed error in refusing to admit the plaintiff's prior medical records, the evidence still supports the award of $85,000.00 in general damages.
Accordingly, the judgment of the trial court awarding plaintiff lost wages is reduced to $11,923.81, and the judgment awarding plaintiff $85,000.00 in general damages is hereby affirmed.
MODIFIED IN PART; AFFIRMED IN PART.