WILLIAMS, Judge.
Elizah Gray, Jr.[1] appeals the juvenile courts' judgment adjudicating his children, Amanda and Michael Gray, in need of care and placing them in the custody of the Department of Health and Human Resources. We affirm.
Appellant alleges that the trial court erred in: (1) permitting Elizah Sproles, who was neither offered, qualified, nor ruled to be an expert, to testify as an expert and give his opinions in support of adjudication; (2) admitting Elizah Sproles’s testimony as to what the children said to him because it constituted hearsay and also because the children had been found incompetent by the court; and (3) finding that the state had proven its case by a preponderance of the evidence.
FACTS
On February 28, 1983, the testimony of Elizah Thomas Sproles, M.D. and Detective Joan Charles was taken before Judge Sal-vadore Mule of the Orleans Parish Juvenile Court.
Dr. Sproles stated that he was the pediatric consultant for the Orleans Parish Child Protection Center and a pediatric consultant at Louisiana State University. He testified that he examined Amanda and Michael Gray on September 20, 1982.
Dr. Sproles testified that upon physical examination of Amanda, who was six years old at the time, he found that she had *309 hypo-pigmented linear lesions in both corners of the mouth, compatible with having been gagged; multiple loop and linear marks on the extremities, primarily the upper extremities; multiple round contusions of about three-quarters of an inch in circumference; abrasions on the back, abdomen, and lower chest; a large hematoma on the left anterior forearm overlying an area of swelling and tenderness that he felt represented a callus, or large area of calcification, occurring around the site of a healing fracture; swelling of the top of her left foot; resolving bilateral black eyes; and an irregular, healed scar on the left buttock compatible with a burn. Counsel for appellant entered an objection, which was overruled, when Dr. Sproles began to relate a statement Amanda had made to him. Dr. Sproles testified as follows:
[t]he child said that both the mother and father had hit her with a hammer and belt and had tied her up. She said also that her mother burned her on the buttocks with a hot comb and that her father hit her on the arm at the fracture site with a hammer.
Dr. Sproles further testified that upon examining Michael, also six years old at the time, he found reddish-purple contusions on both hips and a one-inch linear contusion of approximately the same age on the left thigh. He testified, “Michael told me that his father had hit him with a belt and with a hammer.”
Dr. Sproles testified that he found Amanda’s and Michael’s explanations as to how they received their injuries to be compatible, on all counts, with his physical examination of the children.
Joan Charles, a police officer with the New Orleans Police Department’s Child Abuse Unit, testified that on September 18, 1982, she was contacted by Patrice Green, a social worker, and advised of a complaint of physical abuse of Amanda Gray. Detective Charles went to the children’s school and interviewed them both. She asked them both to disrobe. She saw that Amanda had dried blood about her nose; linear marks about the sides of her mouth that .were like bruises; a circular bruise to the middle left side of her face; a black eye to her left eye; a raised, discolored bruise to the middle part of her left arm; various scratches in different stages of healing on her neck; an old lacerated bruise in the center of her back; a raised discolored bruised area about two inches by one inch in the middle of her chest; a lacerated bruise to her chest; and several old linear marks on her back. Her left foot was extremely swollen and she was barely able to walk. Detective Charles examined Michael and saw circular marks, discolored and raised, on his hips, and arch-like marks on his back that were discolored.
The trial judge then called the children into his chambers to determine their competency to testify. After deeming them incompetent, the trial judge ruled that the state had proven by a preponderance of the evidence the allegations of its petition and found Michael and Amanda Gray children in need of care.
TESTIMONY OF DR. SPROLES
At the same time that both Mr. Gray’s and Mrs. Gray’s counsel objected to the statement of Amanda Gray as hearsay, Mrs. Gray’s counsel noted that Dr. Sproles had not been tendered to the court as an expert. Mrs. Gray’s counsel then stipulated that Dr. Sproles was a licensed physician. Since the court did not, at this time, qualify Dr. Sproles as an expert in child abuse, whatever expert testimony Dr. Sproles put forth would not be admissible. We do not consider, however, that Dr. Sproles’s testimony went beyond that of a licensed physician, and therefore consider all of it admissible. The fact that a witness called as an expert is not competent to give expert testimony does not affect his competency to testify as to matters not requiring expert knowledge. La.R.S. 15:467. The only statement we can consider even to approach expert testimony was Dr. Sproles’s assertion that while one black eye could be compatible with accidental injury, the presence of two black eyes indicated intentional injury. While we consider this knowledge well within the reach of any *310 physician and not limited to the child abuse specialist’s expertise, we do note that exclusion of this minor portion of evidence would have no effect upon the substantial basis for the court’s adjudication.
CHILDREN’S STATEMENTS TO DR. SPROLES
Appellant asserts that because the trial judge ruled the children incompetent to testify at trial, statements made by the children to Dr. Sproles six months before should likewise be held inadmissible.. We cannot analogize the physician-child situation to the courtroom situation. In deciding whether to put these small children on the witness stand, the trauma of reliving their painful beatings, of testifying against and in the presence of their parents, and of being subjected to the multitude of strange and possibly frightening adults in the courtroom, were important considerations. The decision not to allow the children on the witness stand simply is not highly relevant to the truth of statements made by each child during a private examination by a physician a short time after receiving his or her injuries. The weight of the children’s testimony to Dr. Sproles was appropriately left for the trial judge to assess.
Appellant further asserts that the statements of the children are inadmissible as hearsay. The children’s statements to Dr. Sproles were an integral part of his examination of them, aiding him in the formation of a precise diagnosis. We cannot see any reason to doubt the truth of the children’s statements considering the environment in which they were made and noting that Dr. Sproles found the children’s statements to be completely verifiable by the physical evidence he uncovered in the examination. Hearsay history of a case related to a physician is admissible under federal law, F.R.E. 803(4), and under Louisiana criminal jurisprudence, State v. Watley, 301 So.2d 332 (La.1974). In Louisiana, evidence is more liberally admitted in a civil trial than in a criminal one. We are not troubled with the verity of the children’s statements. The trial court was not in error in admitting them into evidence; an assessment of their weight was properly within the realm of the trial judge.
BURDEN OF PROOF
Appellant asserts the state has not proven its case by a preponderance of the evidence, and further asserts that the trial judge supplemented the state’s case by calling the children as witnesses and using evidence gathered from them in chamber to complete the case in order to deny appellant’s motion for dismissal.
We have reviewed the transcript of the trial judge’s examination of the children in his chambers, and find that absolutely nothing was spoken among them that had any relation whatsoever to the matter at trial. The judge simply evaluated their ability to respond adequately in a courtroom situation. This was entirely appropriate. C.J.P. Art. 74.
Article 13 of the Code of Juvenile Procedure reads in pertinent part:
(14) “Child in need of care” means a child:
(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child ...
We agree with the trial court that the state proved, by a preponderance of the evidence, that Amanda and Michael Gray are children in need of care.
For the foregoing reasons, the decision of the trial court is AFFIRMED.
AFFIRMED.

. In the record Mr. Gray is referred to both as Elizah and as Elijah.