ARMSTRONG, Judge.
Appellant, Rosemary Kelly, appeals from a judgment of the Juvenile Court for the Parish of Orleans, finding two of her minor children, L.K. and C.K., to be “in need of care.”
The State, appellee in this case, originally filed a petition seeking to have L.K. and C.K., ages sixteen and six, respectively, declared children in need of care under La.CJ.P. art. 13(14). The petition was filed on the basis of an affidavit executed by Mary Dixon, a case manager with the Office of Community Services.[1]
At trial Ms. Dixon testified that she had known and had contact with appellant since May, 1988. Sometime prior to August 8, 1988, appellant informed her that she was pregnant and not taking her medication. Appellant has been diagnosed as a paranoid schizophrenic and had been prescribed medication to control her illness. Appellant’s six-year old daughter, C.K., made a complaint to Ms. Dixon which led her and police officers to remove the children from appellant’s custody and care.
Ms. Dixon also related that while she was in the court waiting area in connection with this case, on September 1,1988, appellant sat behind her, began poking her in her back, and asking where her child was (the one-year old). She was told by Ms. Dixon that the child had been placed with appellant’s sister. Appellant left, then came back and poked her finger in Ms. Dixon’s face and grabbed her by the shirt collar. Ms. Dixon also testified that appellant threatened to buy a gun and kill her.
Dr. Sahn Nguyen, a physician who had completed a one-year residence in psychiatry, was called to testify by the State. The defense stipulated that Dr. Nguyen was an expert in the field of psychiatry. Dr. Nguyen first treated appellant in “February or April, 1987.” At the time of trial he had seen her seven or eight times. Apparently, he had never diagnosed appellant, but, he stated that she had previously been diagnosed as a paranoid schizophrenic. He testified that she informed him that she was the children’s mother and had the right to hit them. He said she cursed him and refused to speak with him. At one point in his testimony he said she couldn’t properly take care of her children. But, he did say that, if she takes her medication on a regular basis, she does well. Dr. Nguyen said he directed appellant to cease taking her medication because she was pregnant. Overall, Dr. Nguyen’s testimony was somewhat confusing, as evidenced by a later remark by the trial judge when he stated, “The State’s doctor did not satisfy me at all.”
Appellant called Dr. Thomas Zerkowski, who was in his first year of residency in psychiatry at Charity Hospital. The State stipulated that Dr. Zerkowski was an expert in the field of psychiatry. Dr. Zerkow-ski treated appellant from the middle of October, 1988, to the first part of November, a period of two to three weeks. Dur *1326 ing that time he saw her three days a week for one-half hour per day. He said appellant displayed schizophrenic tendencies, but that she didn’t have any hallucinations or delusions during this period. It was Dr. Zerkowski’s opinion that appellant was schizophrenic. He said she came into Charity Hospital on medication but it was stopped; he said she did not appear to need medication. He believed she had the ability to take care of her children. He also felt that it would be normal to feel some hostilities toward a social worker who is trying to take your children away, but, added that it would not be normal to grab and abuse, or threaten to kill her.
Mary Kelly, appellant’s mother, testified that she saw her “beating” L.K. with a broom handle. It was actually a piece of broomstick, approximately fifteen inches long by one-and-a half inches wide. Ms. Kelly said that appellant treated C.K. much better than L.K., but “didn’t take care of her from day to day.” She also stated that she had seen welts on C.K.’s legs and hips. She said that when appellant does not take her medication she “will start beating and mistreating the child.” She said this has been going on for ten years. Ms. Kelly also stated that her daughter had once threatened to kill her.
L.K., appellant’s daughter, testified that when her mother didn’t take her medication, she cursed her and yelled at her for no reason, and sometimes hit her. In contrast, she said, when her mother took her medication, “we act like a family.” On one particular occasion, appellant struck her in the back of her head with a stick (the broomstick incident). L.K. stated that she felt her mother might harm her, and that she “might not wake up in the morning.” She further stated that appellant said, “she was gonna shed my blood and put me in my grave.” L.K. said she had never seen appellant mistreat or threaten C.K.
Appellant, Rosemary Kelly, was the last witness to testify at trial. She is thirty-three years old. She lives in one-half of a double residence; her mother lives on the other side. Appellant testified that she stopped taking her prescribed medication, Haldol, because she was pregnant and was informed that Haldol might be harmful to the fetus. She did say, however, that she was taking Lithium, prescribed to her by a physician at a local mental health clinic. Neither psychiatrist testified about the drug Lithium.
Appellant testified that when her children “get out of order,” she spanks them with her hands or her belt. She said she only strikes them on their buttocks and legs, and never spanks them for no reason. She admitted to striking L.K. four times with a piece of broomstick. She had requested that L.K. come to a Mother’s Day picnic at City Park and she didn’t show up. Later, appellant was chastizing her when L.K. walked away and said, “I don’t want to hear it.” Appellant said she saw the piece of broomstick and picked it up and hit L.K. with it. She claimed that this was the only time she had ever hit her with a stick. She admitted grabbing Ms. Dixon by her collar and asking about her child, but denied ever threatening to kill her. Appellant testified intelligently about her children’s needs and her guidance of them.
At the end of the hearing the trial judge gave his reasons for finding the children to be in need of care. He believed the testimony of Ms. Dixon, that appellant had threatened to kill her. He believed that appellant loses control of herself on occasion. He also strongly felt that using a belt to strike the children was not reasonable — definitely not a stick. He said, “If I find out that a mother has been using an instrument on her children, then I am going to have to take the appropriate action.”
On appeal, Rosemary Kelly asserts that the trial court erred in finding that L.K. and C.K. were children in need of care.
Under La.C.J.P. art. 13(14), a child in need of care is one:
“(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seri *1327 ously endangers the physical, mental, or emotional health of the child;
(b) Whose physical, mental or emotional condition is substantially threatened or impaired as a result of the refusal or neglect by his parent to supply the child with necessary food, clothing, shelter, treatment either by medical care or in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success, counseling, or education, or as a result of the parent’s neglect or imposition of cruel punishment; however, nothing herein shall prohibit the court from ordering medical services for the child when there is substantial risk of harm to the child’s health or welfare; or
(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent or, for any other reason, is placed at substantial risk of imminent harm because of the continuing absence of the parent. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.”
There was no allegation or evidence of sexual abuse. Neither was there any evidence that appellant was not supplying the children with necessary food, clothing, shelter, or medical care, or that appellant had abandoned the children, leaving them unsupervised. Appellant’s mother made some vague comment about her “not caring” for the children on a “day to day basis,” but this was not substantiated by any other evidence in the record.
It appears that the trial court must have found either, (1) that under subsection (a) appellant inflicted or attempted to inflict physical injury upon L.K. and C.K. which seriously endangered their physical, mental, or emotional health, or (2) that under subsection (b) L.K. and C.K.’s physical, mental, or emotional condition was substantially threatened or impaired as a result of appellant’s imposition of cruel punishment.
The State was required to prove the allegations of its petition — that the children were in need of care — by a preponderance of the evidence. La.C.J.P. art. 73; In Interest of Gray, 454 So.2d 307 (La.App. 4th Cir.1984). The petition filed by the State contains a number of allegations concerning appellant’s mental illness. But, strictly construing La.C.J.P. art. 13(14), even if established, a parent’s mental illness — status as a diagnosed paranoid schizophrenic— does not alone support a finding that a child is in need of care. Nevertheless, the mental health of a parent cannot be ignored and must be considered by the court.
Appellant admitted that she sometimes disciplined L.K. and C.K. by striking them with a belt. Appellants mother had seen welts on C.K.’s hips and legs. Appellant admitted to hitting L.K. four times with, what we consider to be, a medium-sized piece of wood. L.K. said her mother hit her in the head with the stick and appellant’s mother testified that the blows left welts on the child. L.K. also testified that her mother threatened to “shed my blood and put me in my grave.” L.K. obviously feared her mother. The testimony of L.K. and appellant’s mother indicates that the drug Haldol helps appellant maintain a measure of control over herself. At the time of trial she was not taking her Haldol because she was pregnant.
. The evidence regarding appellant’s actions toward Ms. Dixon must be considered. Again, while the focus is on appellant’s treatment of her children, this evidence may reflect a tendency towards emotional indiscretions such as threatening to kill Ms. Dixon. Appellant’s mother also testified that she threatened to kill her.
It is correct that there was no showing of a history of serious physical abuse accompanied by life-threatening or maiming injuries. The cases cited by appellant do involve more serious incidences of abuse *1328 than were found in the case at bar. However, we feel the trial court could have concluded that the physical, mental, or emotional conditions of the children, at the time of trial, were substantially threatened or impaired as a result of appellant’s imposition of cruel punishment and/or that her infliction, or attempted infliction of physical injury upon her children, seriously endangered their physical, mental, or emotional health. Considering appellant’s disciplining the children with belts, hitting L.K. with a stick, her other behavior, and her status as a schizophrenic unable to take her prescribed medication, we are unable to say that the trial court abused its discretion in ruling that L.K. and C.K. were children in need of care under La.C.J.P. art. 13(14). The evidence was sufficient to support such a finding by a preponderance and we are unable to say that such a finding was clearly wrong.
The trial judge informed appellant that it was the court’s desire to reunite appellant and her children in the future. He ordered another hearing set for several months later, on January 10, 1988. However, due to the pendency of this appeal the hearing was continued indefinitely. We understand that appellant has given birth and is now taking her prescribed medication. We will remand this matter to Juvenile Court, for the Parish of Orleans, for an expedited hearing to consider the current circumstances of the parties.
For the foregoing reasons we affirm the judgment of the trial court. We remand this case to the lower court for an expedited hearing.
AFFIRMED AND REMANDED.

. A third child, one-year old A.K., was also removed from appellant’s custody and care, but he is the subject of another proceeding.