673 So.2d 1283 (1996)
STATE of Louisiana
v.
Russell J. COLEMAN.
No. 95-KA-1890.
Court of Appeal of Louisiana, Fourth Circuit.
May 1, 1996.
*1285 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for the State of Louisiana.
Alton J. Hall, Jr., Supervising Attorney, Robert Larkin, Student Attorney, Tulane Law Clinic, New Orleans, for Defendant/Appellant.
Before LOBRANO, PLOTKIN and MURRAY, JJ.
PLOTKIN, Judge.
This appeal presents a significant issue of criminal evidence. We consider whether statements made by a victim of molestation and rape to a forensic medical expert are admissible, and, if so, whether they may include references to sexual abuse of the victim prior to the crimes charged. We hold that reports of prior sexual abuse to a forensic medical expert are inadmissible under the circumstances of this case. However, we find their admission harmless because of the presence of sufficient independent and uncontradicted evidence to sustain the conviction.
On December 16, 1993, Russell J. Coleman was indicted by grand jury for aggravated rape (La.R.S. 14:42), attempted aggravated crime against nature (La.R.S. 14:27, 89.1), and aggravated burglary (La.R.S. 14:60). After trial on April 24 and 25, 1995, a twelve-person jury found him guilty as charged on all three counts. On May 3, 1995, the State filed a multiple bill as to count three. After a hearing on that date, the trial judge found Coleman to be a second offender. He was then sentenced concurrently to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for aggravated rape; fifteen years at hard labor without benefit of probation, parole, or suspension of sentence for attempted aggravated crime against nature; and sixty years at hard labor as a multiple offender for aggravated burglary. Coleman appeals contending that (1) the trial judge erred in admitting hearsay through a physician's report of patient history, (2) the trial judge erred in allowing evidence of other prior bad acts, and (3) there was insufficient evidence to convict him of aggravated rape and attempted aggravated crime against nature. Coleman does not appeal his conviction and sentence for aggravated burglary.
Charlotte Coleman had two children, including the victim S.R., when she married Russell Coleman and moved to California in July 1991. It is alleged that on three or four occasions when Charlotte was at work Russell fondled S.R. who was approximately ten years old at the time. In 1993, the family returned to New Orleans and resided at 1267 South Johnson Street with S.R.'s grandmother. It is alleged that Russell continued to fondle S.R. After a couple of months, Charlotte, Russell, and the children moved to an apartment at 816 North Gayosa Street. It is alleged that in July 1993 after S.R.'s twelfth birthday, Russell fondled S.R. and told her to go into the bathroom and remove her clothes. He pushed her into the bathroom, locked the door, and twisted her arm behind her back to force her to remove her clothing. He leaned her over the bathtub and vaginally raped her. S.R. then took a bath and threw away her clothing including underwear that was stained with semen. S.R. did not report these incidents to her mother because Russell threatened her.
On August 16, 1993 at approximately 4:00 a.m., it is alleged that Russell woke S.R. and told her to remove her bra. When she refused, he threatened to hit her with a broom and he tried to force her to fellate him. Because this was the first time that her mother was home when she was being abused, S.R. escaped and woke her mother to tell her that Russell attacked her. Charlotte confronted Russell and noticed that he had an erection. They argued and Russell left the apartment. The police were called but no report was written because the responding officer, Ronald White, mistakenly believed that the matter would be pursued by the child abuse division. The next day Alan Johnson, a friend of Charlotte who she subsequently married, helped Charlotte and the children move to 919½ North Lopez Street, *1286 where Charlotte intended to reside without Russell, whose name was not on the lease.
On August 16, 1993, at approximately 10:00 p.m., Charlotte ran into her children's bedroom after she heard S.R. try to scream. Alan Johnson followed. The room was dark and they heard Russell, who did not have Charlotte's permission to enter the apartment and who had apparently climbed through a window, threaten to cut S.R.'s throat. Alan struggled with Russell, who was initially holding a knife, while Charlotte escorted the children from the room. When Officer White responded, he found Russell held in a headlock by Alan and a knife nearby. Officer White advised Russell of his rights and Russell indicated that he understood his rights before saying, in the officer's words, "Man, this has been going on. And, how it started was he overheard the two juveniles, females, either playing with they self or talking about they self in the bathroom. He told the juvenile that he would use that against her to gain for what he wanted from her. He would tell her mother." S.R. had marks on her neck from the knife and bruises on her face. Russell was arrested.
S.R. denied that Russell had ever raped her when questioned by the police. In November 1993 as they prepared for trial, S.R. revealed to Charlotte that she had been raped by Russell in July 1993. S.R. was not examined until February 1995 when she was referred by the District Attorney to Dr. Catherine Coffman for evaluation. It was stipulated that Dr. Coffman is an expert in pediatrics and child sexual abuse. Dr. Coffman testified that she interviewed S.R. who told her that she had been raped and repeatedly fondled. A physical examination revealed a typical adolescent hymen and lab studies returned negative. Dr. Coffman opined that the lack of physical evidence was consistent with the rape of a child of this age eighteen months prior to the exam.
The defense called no witnesses.
In his first assignment of error, appellant contends that the trial court erred in admitting hearsay through the testimony of Dr. Coffman. Specifically, appellant asserts that information provided by S.R. and her mother to Dr. Coffman is not admissible as statements made for the purposes of medical treatment or diagnosis in accordance with La.C.E. art. 803(4) because Dr. Coffman took the patient's history eighteen months after the sexual abuse occurred. The State replies that a history of sexual assault is relevant to diagnosis and treatment.
In State v. Watley, 301 So.2d 332, 334 (La.1974), a psychiatrist who was called to testify about the functional level and personality of a mentally retarded prosecutrix relayed the circumstances of her rape to the jury. The Louisiana Supreme Court discussed the admissibility of physician reports of patient histories in the context of sex offenses:
The use of hearsay history of the case as told to the physician by the patient may be admissible if received not to show the truth of the facts stated but only the basis for his opinion, but all hearsay history not necessary to this diagnosis is inadmissible.
Nevertheless, because of the possibility of abuse, the physician's testimony before a jury of the facts recited to him by one he examines or treats has often been limited by various judicial rules. These sometimes vary in application, for instance, according to whether the physician was treating the patient (to whom the patient might be expected to tell the truth in order to get well) or was one employed for the purpose of litigation, or according to whether the patient told the facts to the doctor immediately after the occurrence or at an interval later, according to whether the facts at issue concern an external cause of the injury or condition as contrasted with a symptom or progress of the condition.
. . . .
In the present case, this complex and sensitive issue was properly raised by the objection at the trial. However, in brief in this court counsel does not rely upon it. For this latter reason, as well as because the thirteen lines of history-testimony were not so significant a part of the expert's entire testimony and because the trial judge so heavily cautioned the jury as *1287 to the limited purpose of this testimony, we do not feel that the issue is raised here so as to constitute reversible error.
Watley, supra at 335 (citation omitted). In State v. Tucker, 619 So.2d 1076, 1077-80 (La.App. 1st Cir.1993), the First Circuit concluded that a social worker's extensive testimony about a three year old child's revelations of sexual abuse through anatomically correct dolls was improperly admitted to prove that the child was sexually abused. In State v. Bennett, 591 So.2d 783, 786 (La.App. 4th Cir.1991), this Court found a physician's report of the manner of the rape itself properly admitted to show the purpose of the doctor's examination but found harmless the improper admission of portions of the patient history in which the patient told her doctor that she was forced to drive to a secluded place before being raped.
Although a subsidiary purpose of Dr. Coffman's evaluation was to identify and treat any sexually transmitted diseases or other physical harm that may have resulted from rape, the principal reason for the examination was forensic. S.R. was referred to Dr. Coffman by the District Attorney eighteen months after the rape was alleged to have occurred and fifteen months after S.R. first made the allegation to her mother. The report of the examination was provided only to the District Attorney. S.R. received no treatment as a result of evaluation.
In a case like this, the District Attorney may find an expert witness such as Dr. Coffman necessary to explain evidence of sexual abuse or to help a jury understand a victim's reaction to her abuse including any reluctance to report the incidents. Patient history, however, may not be used to prove the fact that abuse occurred. Dr. Coffman's testimony extended beyond what was necessary to show the purpose of her examination and touched upon the truth of the allegations of rape and prior fondling. Like Bennett and unlike Tucker, however, S.R. testified in detail about the incidents, which were only briefly reported in general terms by Dr. Coffman. Moreover, Dr. Coffman, who was thoroughly cross examined, explained to the jury that she found no physical evidence of sexual abuse. Under the circumstances of this case and after a careful review of the entire trial transcript, we find beyond a reasonable doubt that any improperly admitted hearsay regarding the rape in Dr. Coffman's testimony did not contribute to the verdict in an otherwise strong case for the State. Dr. Coffman's testimony regarding prior acts of fondling is discussed below.
In his second assignment of error, appellant contends that the trial judge erred in permitting the State to introduce evidence in violation of State v. Prieur, 277 So.2d 126 (La.1973), that the defendant had previously fondled S.R. on several occasions. Specifically, appellant contends that this evidence of prior bad acts was highly prejudicial, of limited probative value, and uncorroborated. Moreover, appellant asserts that Prieur does not permit nonvictim third parties, such as S.R.'s mother and physician, to testify through hearsay about the prior abuse of S.R. The State replies that the victim's testimony of prior acts of sexual abuse was corroborated by the testimony of her mother and Dr. Coffman and admissible to prove system and intent.
In State v. Morgan, 296 So.2d 286, 287-88 (La.1974), the Louisiana Supreme Court discussed the role of evidence of prior sex offenses in a subsequent prosecution for a sex offense, quoting Wharton's Criminal Evidence (footnotes omitted):
Sex cases call for special treatment with respect to the admission of evidence of other offenses. They are subject to the same exceptions that non-sex criminal trials are subject to, and in addition they are often subject to a special rule relative to the defendant's propensity to commit the crime on trial.
Some courts depart sharply from the general rule which bars the use of other offenses to prove the defendant's propensity or disposition and permit the introduction in sex cases of evidence of other sex offenses in order to show the defendant's propensity, inclination or disposition toward sex in general, that is, without regard to whether the defendant's victim or partner was the same person. Other courts refuse evidence of other sex offenses which *1288 involve different victims or partners, but nearly all courts permit evidence of other sex offenses which involve the same person as the offense on trial, the theory being that the evidence shows the defendant's lustful attitude toward that person. In any event, courts in sex cases are probably more liberal than they are in other cases in admitting evidence of other offenses.
See also State v. Acliese, 403 So.2d 665, 667 (La.1981); State v. Tolliver, 621 So.2d 17, 19 (La.App. 2d Cir.1993). When the defendant claims the sex offense with which he is charged was accidental, prior sex offenses are relevant to show his general intent; when the defendant denies the sex offense with which he is charged occurred at all, prior sex offenses are relevant to show motive, which the jurisprudence often calls "lustful disposition." State v. Driggers, 554 So.2d 720, 725-26 (La.App. 2d Cir.1989).
To introduce competent evidence of prior sex offenses, the State must give sufficient notice and the trial judge must give limiting instructions in accordance with State v. Prieur, the prior offenses must be proved by clear and convincing evidence, the prior offenses must be relevant under La.C.E. 404 B, and the State must show that the probative value outweighs any prejudicial effect. State v. Jackson, 625 So.2d 146, 149 (La. 1993). In the instant case, it is not disputed that the defendant received proper notice and that a hearing was held in accordance with Prieur. The record shows that the jury was repeatedly and correctly instructed regarding the use of the testimony at issue. The testimony presented established by clear and convincing evidence that Russell Coleman had fondled S.R. on several occasions prior to the rape. Cf. State v. Howard, 520 So.2d 1150, 1154 (La.App. 3d Cir.1987), writ denied, 526 So.2d 790 (La.1988).
In the context of Prieur evidence of prior sexual abuse, the victim testifies about incidents of abuse by the defendant prior to those charged or a third person victim testifies about incidents of abuse perpetrated by the same defendant which are similar to those charged. See, e.g., State v. Long, 590 So.2d 694 (La.App. 3d Cir.1991); Howard, supra at 1151-52. State v. Prieur does not justify admitting the hearsay testimony of nonvictim third persons to corroborate a victim's complaints of prior sexual abuse by the defendant. The trial judge erred in permitting the State to use State v. Prieur to introduce hearsay. Nor does any exception render this hearsay testimony admissible. Hearsay testimony regarding sexual abuse of the victim prior to the crimes charged is not admissible to establish system and intent or motive.
We find, however, the error of admitting the testimony of S.R.'s mother and Dr. Coffman regarding prior incidents of fondling harmless. These prior acts are less serious than the crimes charged and they involve complaints by the same victim. Cf. State v. Jackson, 625 So.2d 146, 152 (La.1993); State v. Driggers, 554 So.2d 720, 727 (La.App. 2d Cir.1989). S.R. properly testified about the fondling in accordance with Prieur. Under the circumstances of this case and after a careful review of the entire trial transcript, we find beyond a reasonable doubt that any improperly admitted hearsay testimony regarding the prior acts of fondling in the testimony of S.R.'s mother and Dr. Coffman did not contribute to the verdict in what was otherwise a strong case for the State.
In his third assignment of error, appellant contends that with or without the evidence challenged in his first two assignments of error, there is insufficient evidence to convict him of aggravated rape and attempted aggravated crime against nature. This assignment of error is without merit.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State *1289 v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole as a rational trier of fact would. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee due process of law. Mussall, Green, supra.
S.R. testified that Russell Coleman twisted her arm behind her back and threatened to break it in order to commit a vaginal rape after which she found semen in her underwear. S.R. also testified that on August 6, 1993, when she was thirteen years old and Russell Coleman was in his twenties, he entered her bedroom, threatened to hit her with a broom, exposed himself, and grabbed her by the back of her neck to pull her head toward his penis. From this testimony, the jury could have determined that Russell Coleman was guilty of aggravated rape and attempted aggravated crime against nature. Cf. State v. Brown, 620 So.2d 508, 514-15 (La.App. 4th Cir.), writ denied, 625 So.2d 1062 (La.1993); State v. Wright, 598 So.2d 561, 564-65 (La.App. 4th Cir.1992).
Accordingly, appellant's convictions and sentences are affirmed.
AFFIRMED.